[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The following background facts are not in dispute. The parties were married on November 26, 1988 in Croton Falls, New York, approximately ten and a half years ago. Both parties have lived in this state for more than twelve months prior to the filing of the complaint, therefore, the Court has jurisdiction. There is one minor child issue of the marriage, Ryan Bannon, born on January 22, 1995, who is now four years old. The parties had lived together in a jointly owned residence in Brookfield, Connecticut, until August of 1996, when the plaintiff (husband) moved his primary residence to a Co-op in Bronxville, New York. The parties had purchased it as an investment during the marriage. The defendant (wife) continued to reside with the minor child in Brookfield.
The wife is thirty-seven (37) years old and is in general good health. The husband is thirty-eight (38) and is also enjoying good health. At the time they were married, the wife worked full-time as a mortgage underwriter at a bank earning a CT Page 5587 gross salary of about $30,000 a year. In 1989, to her credit, she returned to Pace University as a full-time student and earned a bachelor's degree in business. During the marriage, she worked both full and part-time as a mortgage underwriter, and her highest gross annual salary was about $45,000 in 1993. In 1994, she worked full-time for GE Capital in Cherry Hill, New Jersey, as an underwriter, and was able to come home only on weekends, earning about $50,000 a year. She earned only about $5000 in 1998 because she believed her primary responsibility was taking care of her minor child. In her current financial affidavit, she lists no income. The Court finds she has a present earning capacity of about $50,000 a year. She is ready, willing and able to find employment.
After the complaint was served on her in November, 1997, she earned about $5000 part-time in 1998. She had a difficult pregnancy. After giving birth, she was treated for a clinical depression, and presently has it under control with medication. During her pregnancy, she suffered with fibromyalgia, a debilitating soreness to her joints. With medical treatment, her general health has improved.
In 1994, the marriage began to break down because both were working long hours and saw each other only on weekends. After Ryan was born in January 22, 1995, the stress escalated. They tried marriage counseling but the relationship did not improve. They had violent arguments, some lasting over ten hours. She had difficulty dealing with his family. On several occasions, she struck him and verbally abused him. There was no testimony that the husband abused her. The testimony of the husband relative to the physical and emotional abuse by the wife was credible and uncontroverted. Her behavior more than his contributed to the marital breakdown. The Court finds this marriage has broken down irretrievably without any prospect of reconciliation, and a decree of dissolution may enter pursuant to § 46b-40(c) of the Connecticut General Statutes.
The complaint was served on the wife on November 26, 1997, with automatic orders attached thereto. In relevant part, they provide that "neither party shall incur unreasonable debts hereafter . . . or using credit cards or cash advances against credit cards." The wife incurred credit card debt on his Citibank VISA card of about $13,391.41 between October, 1997, through April 6, 1998, and charged over $9000 on this card for personal clothing. (See Plaintiff's Exhibit 1.) The Court finds CT Page 5588 these charges unreasonable and in violation of the automatic orders, and has taken this violation in consideration in deciding the court orders.
The wife's current financial affidavit lists no income. Her living expenses with her minor son are listed at $266.37 per week or about $14,000 annually, excluding the mortgage, taxes, or repairs on the Brookfield home which are being paid by the husband. Her credit card debts are listed at $18,400 with interest accruing at about $3640 annually. She lists the value of the Brookfield residence and the Bronxville Co-op at $69,520, and an IRA at $15,000. She has bank accounts of only $200 and no other liquid assets.
The husband's financial affidavit listed net weekly earnings of $1287.43 or about $5534 a month. His expenses to maintain the mortgage, taxes and insurance on the Brookfield home are about $2000 a month. His expenses on the Bronxville Co-op are about $600 a month. He has listed credit card debts of $43,110 costing him $2215 in interest per month. His monthly living expenses are an additional $1783 a month, and the wife lists $914 for total monthly expenses of $7512. With his net monthly income of $5534, there is a monthly shortfall of about $2000 a month. The husband's net earnings will not allow him to maintain the Brookfield home, the Bronxville Co-op, and his credit card debts. His one-half interest in the Brookfield home is valued at $32,500 and the Bronxville Co-op at $26,000, which the Court finds reasonable. With her one-half interest in the Brookfield home of $32,500, the total net value for both properties would be $91,000. The Court finds it in the best interest of both parties to sell all of the real estate and pay off both mortgage debts and their credit card debts.
The Court has listened to all the witnesses and reviewed all the exhibits in evidence. In addition, the Court has taken into consideration all the criteria set forth in § 46b-82, the alimony statute; § 46b-81, the assignment of property and assets statute; § 46b-84, the child support statute; and § 46b-215(b) the child support guidelines, as well as the relevant case law, including Scherr v. Scherr, 183 Conn. 366 (1981).
Accordingly, the following orders may enter.
 ORDERS
CT Page 5589 REAL ESTATE, THE BROOKFIELD RESIDENCE AND THE BRONXVILLE CO-OP
Both of the properties shall be placed immediately on the market for sale. The husband is authorized to list the Brookfield residence at $265,000, and the wife is ordered to sign the listing agreement for that amount. The Bronxville Co-op will be listed with Caldwell-Banker for $45,000. (See Defendant's Exhibit B.) The Court has considered the opinion of the appraiser, Frank C. Menichelli, that the Brookfield residence is worth about $250,000. The Court believes that a listing price of $265,00 is reasonable in the present active market. The wife shall cooperate with the brokers and will allow them to show the property at reasonable times to prospective buyers after receiving notice. Any interference by either party in the sale of these properties shall be considered a contempt of court. The price shall be reduced by 5 percent if either the Brookfield residence or the Bronxville Co-op is not sold for sixty days after they are listed and an additional 2 percent every thirty days thereafter. The court shall retain jurisdiction of these sales.
The net proceeds of each sale, after payment of the mortgage, brokerage, attorney's fees, conveyance taxes and the usual other costs of closing, shall be divided equally between the parties. The debts shall be prioritized and paid in the following order:
A. The credit card debts totaling $43,110 listed on the husband's financial affidavit (excluding the Nissan lease).
B. The credit card debts totaling $18,400 listed on the wife's financial affidavit. The wife shall remain solely liable for the $10,000 loan from her mother, Jeannette Conway, in that she incurred about this amount of debt on the Citibank VISA credit card in violation of the automatic orders. (Plaintiff's Exhibit 1.)
The following additional debts may be paid if there are funds available from the sales:
 (1) The $250 appraisal' fee from Frank C. Menichelli; otherwise, they shall be equally liable for his fee.
(2) A fee of $2500 for each of the respective CT Page 5590 attorneys; otherwise, they shall each be liable for their own legal fees.
 ALIMONY AND CHILD SUPPORT
The husband shall pay an unallocated order of alimony and child support of $600 per week for five years. The alimony shall terminate sooner upon the happening of the first of the following events: (a) the death of either party; (b)the remarriage of the wife; (c) cohabitation by the wife with an unrelated male pursuant to § 46b-86(b) of the Connecticut General Statutes. This alimony award is non-modifiable as to term. The wife shall be allowed annual gross earnings of $25,000 before the husband may move for modification of the alimony pursuant to § 46b-86(a) of the Connecticut General Statutes.
The wife has a bachelor's degree in business and is in reasonably good health, and at thirty-seven (37) years of age, she will be able to improve her skills or further her education in order to find employment. This five year alimony award is considered rehabilitative alimony. The minor child will be going to first grade in two years, and with day care should allow the wife to be employed and become self-sufficient. Ippolito v.Ippolito, 28 Conn. App. 745, 752 (1992).
The child support shall be $246 per week upon termination of the unallocated award of $600 per week based on the current Child Support Guidelines until the child reaches nineteen (19) years of age or graduates from high school, whichever occurs first.
 MEDICAL INSURANCE FOR THE MINOR CHILD
The husband shall provide medical/dental insurance for the minor child, and the parties shall share equally all unreimbursed medical, dental, including orthodontia expenses for the minor child, including co-pay. The parties shall share equally the sum of $780 for dental expenses owed to Dr. Teeking and Dr. Federman.
The husband shall provide medical/dental insurance for the wife for one year, and COBRA benefits shall be made available to the wife.
 DAY CARE AND ACTIVITIES EXPENSES FOR THE MINOR CHILD
CT Page 5591
The husband and wife shall share equally in the child's day care expenses, YMCA fees, music class, and day camp during the summer.
 PERSONAL PROPERTY
The wife shall retain the household furnishings in the Brookfield residence, and the husband shall retain all of the household furnishings in the Brownsville Co-op. The husband shall retain all the sports memorabilia as listed on Plaintiff's Exhibit 2, and any of his personal effects remaining in the Brookfield residence. He may remove said personal property at a reasonable time after notice and a sheriff or peace officer shall accompany him.
 INCOME TAXES
The parties shall be equally liable for the $4000 of income taxes owed by the wife for 1995.
 LIFE INSURANCE
The husband shall retain the existing life insurance policy of $14,505, naming the minor child as irrevocable beneficiary as long as he is liable for child support. The husband may obtain a life insurance policy of $100,000 to benefit said child if he is insurable and at a reasonable cost he voluntarily agrees to pay.
 CUSTODY AND VISITATION
The parties shall have joint legal custody of the minor child Ryan with his primary residence to be with the wife. The husband shall have reasonable and flexible visitation with the child as set forth in a stipulation dated August 14, 1998 and ordered by the Court. The Court further orders a maximum of four weeks of vacation for the child with the husband in any calendar year beginning in 1999, with a maximum of one week in any one month.
 RETIREMENT ACCOUNTS
The wife shall retain her two IRA's listed at $15,000, and the husband shall retain his IRA with Merrill Lynch listed at $17,115 on his affidavit, and also his Major League Pension Plan CT Page 5592 which at present has no vested value.
Petroni, J.